**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Tommy VASQUEZ, Defendant–Appellant.**

No. 03CA1821.

Colorado Court of Appeals,
Div. I.

June 29, 2006.

Rehearing Denied Aug. 3, 2006.

Certiorari Denied Nov. 27, 2006. *

---

* Justice EID does not participate.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Tommy Vasquez, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder (heat of passion). He also appeals the sentence imposed. We reverse and remand for a new trial.

Defendant was originally charged with second degree murder and first degree assault arising out of a 2001 altercation with two brothers at a bar.

The three men had a history together. In 1993, they had been involved in another bar fight, which ended when one of the brothers cut defendant's neck with a beer bottle.

The 2001 altercation was initiated when one of the brothers exchanged unfriendly looks with defendant and then threatened him. That brother assumed a fighting posi-

tion and, according to defendant, swung a beer bottle at him. Defendant struck him with a fist and a knife. That brother stumbled, wounded, out of the bar.

Meanwhile, the second brother became embroiled in the fight. He was taken to the floor, where defendant stabbed him. Ultimately, this second brother stumbled outside, where he died. He had been stabbed with a knife numerous times in the chest, abdomen, armpit, and face; the cause of his death was a knife wound that penetrated his heart.

At trial, defendant relied on a defense of self-defense. The jury acquitted him of all assault-related charges as to the first brother, but convicted him of second degree (heat of passion) murder in connection with the death of the second brother. The trial court sentenced defendant to twenty-five years imprisonment.

### I. Self–Defense Instruction

■ Defendant contends that, in connection with the second degree murder charge, the trial court erroneously limited the jury's consideration of self-defense principles to only those involving the use of deadly physical force. According to defendant, a factual dispute existed whether he used ordinary physical force or deadly physical force, and the jury should have been allowed to consider the applicability of self-defense principles relating to the use of ordinary physical force. We agree.

■ "An instruction embodying a defendant's theory of the case must be given by the trial court if the record contains any evidence to support the theory, even if the supporting evidence consists only of highly improbable testimony by the defendant." *People v. Garcia*, 28 P.3d 340, 347 (Colo. 2001).

Thus, the question here is whether, under the law, there was any evidence to support defendant's theory.

Under § 18–1–704(1), C.R.S.2005, a person is justified in using physical force upon another person in order to defend himself or herself from what he or she reasonably believes to be the use or imminent use of unlawful physical force by the other person,

and he or she may use a degree of force which he or she reasonably believes to be necessary for that purpose.

Under § 18–1–704(2)(a), C.R.S.2005, a person may use "deadly physical force" in self-defense only when (1) he or she has reasonable ground to believe, and does believe, that he, she, or another, is in imminent danger of being killed or of receiving great bodily injury; and (2) he or she reasonably believes a lesser degree of force is inadequate.

"Deadly physical force" is defined in § 18–1–901(3)(d), C.R.S.2005, as "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death."

■ Colorado's statutory definition of "deadly physical force" is reminiscent of "the common-law rule that a person is presumed to have generally intended the natural and probable consequences of his or her actions." *United States v. Alli*, 444 F.3d 34, 38 (1st Cir.2006); *see People v. Liggett*, 114 P.3d 85, 90 (Colo.App.2005)(quoting *People v. Fisher*, 759 P.2d 33, 38 (Colo.1988): "Proof of intent is often necessarily indirect, and the fact finder thus may 'infer an intent to cause the natural and probable consequences of unlawful voluntary acts.'"), *aff'd*, 135 P.3d 725 (Colo. 2006). Yet, the manner in which the word "intended" is used in Colorado's "deadly physical force" definition suggests that it is to be given effect independent of the assessment of the natural and probable consequences of one's acts.

Some jurisdictions define "deadly physical force" or "deadly force" simply as having some likelihood of causing a certain result (death or, sometimes, serious bodily injury). *See* Ala.Code § 13A–1–2(6) (1975) (defining "deadly physical force" as "[p]hysical force which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury"); Conn. Gen.Stat. § 53a–3(5) (2005) (defining "deadly physical force" as "physical force which can be reasonably expected to cause death or serious physical injury"); Fla. Stat. § 776.06(1) (2005) (defining "deadly force" as "force that is likely to cause death or great bodily harm"); Ind.Code § 35–41–1–7 (2005) (defin-

ing "deadly force" as that which "creates a substantial risk of serious bodily injury"); N.Y. Penal Law § 10.00(11) (2005) (defining "deadly physical force" as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury"); Ohio Rev. Code. Ann. § 2901.01(A)(2) (2005) (defining "deadly force" as "any force that carries a substantial risk that it will proximately result in the death of any person"); 18 Pa. Cons. Stat. § 501 (2005) (defining "deadly force" as "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury"); *see also State v. Hunter*, 315 N.C. 371, 338 S.E.2d 99, 102 (1986) ("Deadly force has been defined as force likely to cause death or great bodily harm."); *People v. Pace*, 102 Mich.App. 522, 302 N.W.2d 216, 221 (1980)("[D]eadly force has been used where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death.").

Other jurisdictions define "deadly physical force" or "deadly force" in terms of a likelihood of causing that result *or* a mental state in relation to causing that result. *See* Tex. Penal Code Ann. § 9.01(3) (2003) (defining "deadly force" as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury"); *see also Commonwealth v. Noble*, 429 Mass. 44, 707 N.E.2d 819, 821 (1999)("deadly force" is "force intended or likely to cause death or serious bodily harm"); *Earl v. State*, 111 Nev. 1304, 904 P.2d 1029, 1031 n. 2 (1995) (quoting *Black's Law Dictionary* 398 (6th ed.1990): deadly force is "force likely or intended to cause death or great bodily harm"); *Black v. State*, 21 P.3d 1047, 1069 (Okla.Crim.App.2001)(citing, with approval, pattern jury instruction defining "deadly force" as "force intended or likely to cause death or great bodily injury").

The Model Penal Code and some jurisdictions, however, make a mental state a necessary ingredient of "deadly physical force" or "deadly force." *See* Model Penal Code § 3.11(2) (2001) (defining "deadly force" as "force that the actor uses with the purpose of causing or that he knows to create a substan-

tial risk of causing death or serious bodily injury"); Haw.Rev.Stat. § 703–300 (2005) (defining "deadly force" in terms similar to Model Penal Code); Iowa Code § 704.2(2) (2005) (deadly force includes, inter alia, that level of force an actor knew or reasonably should have known would create a strong probability of serious injury); Me.Rev.Stat. Ann. tit. 17–A § 2(8) (2005) (defining "deadly force" in terms similar to Model Penal Code); Minn.Stat. § 609.066(1) (2003) (defining "deadly force" as force "which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm"); Mo.Rev.Stat. § 563.011(1) (2005) (defining "deadly force" in terms similar to Model Penal Code); Neb.Rev.Stat. § 28–1406(3) (2005) (defining "deadly force" in terms similar to Model Penal Code); Vt. Stat. Ann. tit. 13, § 3251(7) (2005) (defining "deadly force" as "physical force which a person uses with the intent of causing, or which the person knows or should have known would create a substantial risk of causing, death or serious bodily injury"); Wash. Rev.Code § 9A.16.010(2) (2005) (defining "deadly force" as "the intentional application of force through the use of firearms or any other means reasonably likely to cause death or serious physical injury").

As noted above, Colorado defines "deadly physical force" as "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." Section 18–1–901(3)(d). Unless we were to either eliminate, as surplusage, the word "intended" or construe the statute to include an additional word (*i.e.*, "or") between "intended" and "natural," we would have to conclude that, in Colorado, an intent element is a necessary ingredient of "deadly physical force." We are not inclined either to strike or add a word to the legislature's definition. *See People v. Cross*, 127 P.3d 71, 73 (Colo.2006)("We do not add or subtract statutory words that contravene the legislature's obvious intent."); *Schlessinger v. Schlessinger*, 796 P.2d 1385, 1389 (Colo. 1990) (courts should be careful to avoid judicial legislation by adding to a statute that which the legislature did not deem proper); *People v. Taylor*, 131 P.3d 1158, 1161 (Colo.

App.2005)(in construing statutes, "[w]e are to give effect to every word and are not to adopt constructions that render any terms superfluous").

Consequently, we conclude that the General Assembly in Colorado included an intent element as a necessary ingredient of "deadly physical force." *See People v. Ferguson,* 43 P.3d 705, 709 (Colo.App.2001)(recognizing that ordinary physical force self-defense principles apply if the force used by a defendant either did not cause death *or* was not intended to produce death). Thus, if the jury found that defendant did not intend to use his knife to produce death, his use of the knife would not qualify as the use of "deadly physical force" as defined by statute.

Here, defendant testified that he did not realize, until after the fight, that he had taken his knife out, and that he did not recall having stabbed either brother. Because this testimony created a dispute about whether he intended to produce death by his use of force, and thus, whether he employed ordinary or deadly physical force, he was entitled to have the jury resolve that issue and apply appropriate self-defense principles. *See People v. Baird,* 66 P.3d 183, 194 (Colo.App. 2002)("A defendant is entitled to an instruction on his or her theory of the case if there is any evidence in the record to support it.").

In restricting the jury's consideration to only the most stringent conditions under which a claim of self-defense could be established, the trial court committed prejudicial error. *See State v. Van Dyke,* 101 Hawai'i 377, 69 P.3d 88, 97–99 (2003)(court reversibly erred in instructing jury only on justifiable use of deadly force, where defendant denied he had used "deadly force" because he had not intended to cause and had not foreseen that he would cause the victim's death); *State v. Westfall,* 75 S.W.3d 278, 281–84 (Mo. 2002)(in assault case, court reversibly erred in restricting jury's consideration to deadly force self-defense principles, where issue existed as to defendant's intent in wielding knife against victim); *cf. People v. Ferguson, supra* (prejudicial error to allow jury to consider deadly physical force self-defense principles when, because the victim did not

die, "deadly physical force" had not been used).

## II. Issues Likely to Arise on Retrial

We also address several issues that are likely to arise on remand.

### A. Intoxication Instruction

■ We reject defendant's contention that the trial court erred in instructing the jury that self-induced intoxication is not a defense to second degree murder.

Under § 18-3-103(2), C.R.S.2005, "Diminished responsibility due to self-induced intoxication is not a defense to murder in the second degree." *See also People v. Gallegos,* 628 P.2d 999, 1002–03 (Colo.1981) (construing § 18-3-103(2) to prohibit the admission of evidence of voluntary intoxication to contest the general intent required for second degree murder).

Further, we are not persuaded by defendant's assertion that the trial court's instruction unduly interfered with the jury's ability to determine whether general, as opposed to deadly physical force, self-defense principles should apply.

■ Although the affirmative defense of self-defense takes into account the actual belief or state of mind of a defendant, it ultimately requires that a reasonable person would have believed and acted as the defendant did. In this context, a "reasonable person" means "an objectively reasonable individual and not a subjectively reasonable one possessing the individual defendant's personality traits or defects." *People v. Darbe,* 62 P.3d 1006, 1011 (Colo.App.2002).

Because the reasonable person standard requires a "defendant [to] appraise the situation as would a reasonable *sober* [person]," evidence of voluntary intoxication is irrelevant to this issue. 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.5(d), at 51 (2d ed.2003) (discussing relationship between voluntary intoxication and self-defense).

For this reason, on remand, defendant is not entitled to have the jury consider evidence of intoxication in connection with his self-defense issues.

### B. Victim's Prior Violent Act

However, we conclude that the court should reevaluate defendant's request to introduce evidence of a prior violent act committed by the two brothers.

 Evidence of a victim's prior violent conduct may be admissible as direct evidence of an essential element of a defendant's claim of self-defense, namely, the reasonableness of the defendant's belief that the victim imminently would use physical force against the defendant. *People v. Lucero,* 714 P.2d 498, 502 (Colo.App.1985).

Here, defendant sought to elicit evidence that, soon after the 1993 fight, he learned of a 1984 incident in which the two brothers supposedly helped beat a man to death.

At trial, the court excluded the proffered evidence because (1) defendant was not at the 1984 event and thus did not "know what took place"; (2) the 1984 incident was too remote from the 2001 bar fight; (3) the evidence would inject too many collateral issues into the case; and (4) defendant already knew, by virtue of the 1993 incident, that the two brothers were violent.

Contrary to the trial court's ruling, it is immaterial whether a defendant personally witnessed the victim's prior violent act or learned of the act through the statements of others. *See People v. Burress,* 183 Colo. 146, 152, 515 P.2d 460, 463 (1973).

We further conclude the proffered evidence had some probative value because defendant's sense of endangerment, arising from the 1993 incident with the two brothers, could only have been enhanced when defendant learned that the two brothers had participated in an earlier killing.

However, whether evidence of the 1984 incident is excludable—because either its occurrence or its discovery by defendant soon after the 1993 fight is too remote to create in 2001 an apprehension or fear sufficient to justify the force used by defendant—is a matter committed to the sound discretion of the trial court. *See People v. Burress, supra,* 183 Colo. at 153, 515 P.2d at 464.

### C. Sentencing

Finally, should defendant be once more convicted of second degree (heat of passion) murder, we conclude that the trial court may treat the crime as a per se crime of violence for sentencing purposes. *See People v. Darbe, supra,* 62 P.3d at 1015; *People v. Martinez,* 32 P.3d 582, 584 (Colo.App.2001).

The judgment of conviction and sentence are reversed, and the case is remanded for a new trial.

Judge MÁRQUEZ and Judge ROMÁN concur.

---

* Justice EID does not participate.