**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GENE E. AVILES,

          Petitioner-Appellant,

v.

LOU ARCHULETTA, Warden,
L.C.F.; ATTORNEY GENERAL OF
THE STATE OF COLORADO,

          Respondents-Appellees.

No. 10-1061
(D.C. No. 1:06-CV-01329-CMA-BNB)
(D. Colo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

Gene E. Aviles, a pro se Colorado state prisoner convicted of first-degree murder and a crime of violence, seeks a certificate of appealability (COA) so that he may challenge the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. He also requests leave to proceed on appeal in forma

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pauperis (IFP). Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we conclude that Aviles has failed to make a substantial showing of the denial of a constitutional right. Accordingly, we deny his request for a COA, and we dismiss this appeal. We further deny his request for IFP status.

## BACKGROUND

On February 22, 1997, Aviles and Chris Malone were at a mall in Jefferson County, Colorado. Both men were wearing clothing that suggested affiliation with the Bloods street gang. Mr. Aviles was armed with a .380 caliber handgun, loaded with Hydra-Shok® ammunition, which causes increased expansion inside the "target material." Trial Tr., Vol. XII at 181.

Aviles accompanied Malone to a T-shirt shop in the mall, where Malone designed a shirt that read, "WANTED 1 SKINNY NIGGER 4 Harley Belt Drive." ROA at 148. Aviles offered input on a few design details.[1] While waiting for the shirt to be completed, Aviles and Malone were spotted by Christopher Seekamp, an African-American who belonged to a rival Crips gang. Seekamp, who was at the mall with two associates, began to taunt Aviles and Malone as they left the store and walked around the mall. There was evidence that both groups exchanged threatening gang signs. Because of the commotion, a crowd of onlookers began to form.

---

[1] Neither Aviles nor Malone is African-American.

Aviles and Malone returned for the finished t-shirt while Seekamp and his associates waited outside the store, in the hall. At some point, Malone displayed the shirt to Seekamp and his associates, prompting one of them to respond, "[T]hat's a cheap shirt almost as cheap as you are." Trial Tr., Vol. X at 104. After Aviles and Malone exited the store and went into the mall, one of Seekamp's associates told them, "[D]on't fuck with us." *Id.*, Vol. XII at 55. That associate testified that Aviles told Seekamp, "[F]uck you, nigger." *Id.* at 56.

Aviles and Malone headed toward a mall exit, followed by Seekamp, his associates, and the crowd of onlookers, which according to one witness had grown to "15 to 20" people. *Id.*, Vol. X at 208. According to one of Seekamp's associates, Aviles said, "let's go outside," suggesting a fight. *Id.*, Vol. XII at 66. Malone broke away from Aviles and ran ahead, exiting the mall. Seekamp followed behind Aviles and taunted him in a loud voice with his hands above his head, asking, "[W]hat are you going to do, you're alone now[?]," *id.*, Vol. XI at 174-75; *see also id.* at 185-86.

Seekamp followed Aviles outside the mall's main doors, but then retreated all the way inside when Aviles displayed his gun. The crowd that had been following the two men "scatter[ed]" inside the mall. *Id.*, Vol. X at 191. Aviles turned away from the mall and proceeded toward the parking lot. But then Seekamp threw open the mall doors with his hands "stretched out in front of him," *id.*, Vol. XI at 75, breaking the glass, and headed out toward Aviles at "a

normal walking pace," *id.*, Vol. X at 193. When Seekamp got to within fifteen or twenty feet of Aviles, Aviles fired one shot, killing Seekamp. Aviles then ran off through the parking lot, threw the gun into a snow bank, and hid in a dumpster. When police found him some time later and removed him, he said, "I give up" and that "[I]t was self-defense." *Id.*, Vol. XII at 147-48, 152.

A jury found Aviles guilty of first-degree murder and a crime of violence, and in doing so, rejected his trial theory of self-defense. The court sentenced Aviles to life imprisonment without the possibility of parole.

In the Colorado Court of Appeals, Aviles argued that (1) the trial court erred in admitting the t-shirt as res gestae evidence; (2) the trial court erred in excluding his statement about self-defense when apprehended by police, erred in excluding evidence that Malone attempted to buy an identical t-shirt one month after the shooting, and erred in precluding witness testimony about the intent of the crowd of onlookers, which Aviles characterized as malicious; (3) the trial court gave erroneous jury instructions; and (4) the evidence was insufficient to convict. The Court of Appeals affirmed, and the Colorado Supreme Court denied certiorari.

Proceeding pro se, Aviles then moved for state post-conviction relief, arguing that his trial counsel was ineffective in not having the t-shirt excluded and in not calling an expert witness to testify about gangs. The trial court denied

the motion, and the Colorado Court of Appeals affirmed in a 2-1 decision.[2]  The

Colorado Supreme Court denied certiorari.

Aviles then filed a second state post-conviction motion, arguing that his

appellate counsel was ineffective for not raising certain federal constitutional

claims.  The Colorado courts again denied all relief.

Finally, Aviles petitioned the federal district court for habeas relief,

repeating some of the arguments he made on direct appeal and during the state

post-conviction proceedings.  He also complained that he was not appointed

counsel and given an evidentiary hearing during the state post-conviction

proceedings.  A magistrate judge recommended denying the petition.  The district

court adopted that recommendation, denied Aviles's petition, and denied his

requests for a COA and for IFP status.

In this court, Aviles seeks a COA to raise (1) the exclusions of his

statement, "[I]t was self defense," evidence that Malone attempted to buy an

identical shirt after the killing, and evidence about the crowd's intent; (2) his trial

counsel's failure to call an expert witness on gangs; (3) the sufficiency of the

evidence; and (4) the lack of counsel during the state post-conviction

proceedings.

---

[2]     The dissenting judge thought that the case should be remanded for
appointment of counsel to explore whether an expert witness on gang psychology
should have been called to testify about why Seekamp re-emerged from the mall
after Aviles displayed his weapon.

## DISCUSSION

### I. Standards of Review

Unless an applicant obtains a COA, we lack jurisdiction to consider the merits of a habeas appeal. 28 U.S.C. § 2253(c)(1)(A). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "This standard requires an applicant to show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008).

Further, where the state courts have addressed the merits of the applicant's claims, we must incorporate the Anti-Terrorism and Effective Death Penalty Act's (AEDPA's) deferential treatment of state court decisions into our consideration of the COA request. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, habeas relief is available if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

-6-

## II. Exclusion of Evidence

Ordinarily, a state court's evidentiary rulings cannot be challenged in a federal habeas petition because they do not involve clearly established federal law. *See Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). But "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process," habeas relief is available. *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (quotations and brackets omitted); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (observing that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" (quotations omitted)).

The Colorado Court of Appeals determined that any error in excluding Aviles's hearsay statement, "[I]t was self defense," was harmless because Aviles's "theory at trial was self-defense, the jury was instructed on that theory, and defense counsel argued self-defense during closing argument." ROA at 184. The federal district court concluded that the state appellate court's determination was neither contrary to, nor an unreasonable application, of federal law, and we agree. There could have been no doubt at trial that Aviles was claiming that he killed Seekamp in self-defense. Indeed, both the prosecutor and defense attorney made that point in opening (not just in closing) statements. Further, that Aviles claimed self defense when apprehended does little to prove whether his claim was reasonable—which was the ultimate issue before the jury. Because Aviles was

fully able to pursue his self-defense theory at trial, we conclude that the exclusion of his statement, even if erroneous, was not fundamentally unfair.

The trial court's additional exclusion of Malone's attempt to buy another t-shirt one month after the killing likewise did not make the trial fundamentally unfair. While the evidence about the subsequent t-shirt purchase attempt may have been indicative of Malone's racial views, it says little about Aviles or the circumstances surrounding his killing of Seekamp. Moreover, the evidence at trial indicated that Aviles's participation in designing the original t-shirt was only minor. In short, the constitutional right to present a complete defense is not abridged by the exclusion of "evidence that is repetitive, only marginally relevant or [that] poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 326-27 (quotations, brackets, and ellipsis omitted).

Regarding the exclusion of a lay witness's testimony about the crowd following Seekamp and Aviles, the Colorado Court of Appeals noted that defense counsel was asking the witness to predict the crowd's intent based on its behavior, even though the witness had seen the crowd only in its final stages. Consequently, there was no foundational basis for the proposed testimony. The court also noted that other witnesses had described the crowd's behavior. Like the federal district court, we conclude that Aviles was not denied a fundamentally fair trial by the (appropriate) exclusion of the witness's testimony. "The accused does not have an unfettered right to offer testimony that is incompetent,

privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Moreover, the jury was able to consider other witnesses' testimony about the crowd's behavior when determining the reasonableness of Aviles's use of deadly force against Seekamp.

We conclude that jurists of reason could not disagree with the district court's denial of habeas relief in regard to Aviles's exclusion-of-evidence arguments.

### III.  Expert Testimony

Aviles contends that his trial counsel was ineffective for not presenting expert testimony on gangs. To prevail on an ineffective assistance of counsel claim, a petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In light of AEDPA, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quotations omitted). And because *Strickland* provides only a general legal standard, the state court must be given "even more latitude" as to the reasonableness of its decision. *Id.*

During the state post-conviction proceedings, Aviles argued that an expert should have been called to testify that his clothing did not necessarily indicate

that he was a rival gang member, that he may have antagonized Seekamp by walking away, that Seekamp's associates and/or the crowd may have encouraged him to re-emerge from the mall after Aviles displayed his gun, and that his awareness of Seekamp as a gang member instilled fear in him. The Colorado Court of Appeals held that trial counsel was not ineffective because the hypothetical expert testimony would not have shed light on the reasonableness of Aviles's belief that deadly force was necessary. "At most it would have shown [Seekamp's] private motivations in continuing to approach [Aviles] after [his] display of the pistol and [Seekamp's] perceptions or misperception of [Aviles] as a rival gang member." ROA at 42. The court also noted that the prosecution did not present expert gang testimony and that there was no indication that an expert existed who was willing to testify as Aviles proposed. The federal district court found that *Strickland* was reasonably applied.

We conclude that the reasonableness of the state court's decision is not debatable. Seekamp's motivations were not relevant. It was clear that he planned to fight Aviles. But what motivated Seekamp's desire to fight does not help explain whether an "objectively reasonable individual" would have used lethal force to stop him. *See cf. People v. Vasquez*, 148 P.3d 326, 330 (Colo. App. 2006) (observing that the "defense of self-defense . . . ultimately requires that a reasonable person would have believed and acted as the defendant did"). Expert

-10-

witness testimony is not admissible unless it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Colo. R. Evid. 702.[3]

Granted, a dissenting state appellate judge thought that Aviles's post-conviction case should be remanded for appointment of counsel to explore whether an expert witness on gang psychology should have been called to testify about why Seekamp re-emerged from the mall after seeing Aviles with a gun. But again, we do not see how speculation concerning Seekamp's private motivations would have been helpful to determine whether Aviles acted in an objectively reasonable manner. Given the doubtful value of the proposed expert testimony, as well as the fact that Aviles neither identified a proposed expert nor faced contrary expert witness testimony, we conclude that jurists of reason could not disagree with the resolution of Aviles's ineffective-assistance-of-counsel claim.

---

[3]     To the extent Aviles argues that there should have been expert testimony to show he reasonably feared Seekamp, it is unclear whether the Colorado Court of Appeals decided this aspect of his ineffective-assistance claim. If not, AEDPA's deferential standards would not inform our decision whether to grant a COA. *See Williams v. Jones*, 571 F.3d 1086, 1090 (10th Cir. 2009). But even reviewing this claim outside the confines of AEDPA, we conclude that it does not warrant a COA. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. There was considerable evidence at trial about Seekamp's aggressive nature, his gang membership, and his large physical stature. Defense counsel could have reasonably determined that Aviles's fear was adequately demonstrated by that evidence and that expert testimony would have been merely duplicative.

III.  Sufficiency of the Evidence

Under the due process clause, evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[O]ur review under this standard is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008) (quotations and brackets omitted).

The Colorado Court of Appeals recited the *Jackson* standard, noted the statutory elements of first-degree murder,[4] and recounted the following evidence:

> [Aviles] exited the mall and was followed by [Seekamp].  [Aviles] then pulled out a gun and brandished it in plain view of [Seekamp], at which time [he] retreated.  [Seekamp], undaunted, again pursued [Aviles], at which time [Aviles] turned and shot [Seekamp], killing him in view of more than fifteen witnesses.

ROA at 193.  The district court found this to be a reasonable application of *Jackson*. We agree, and point out evidence that the jury could have used to reject Aviles's

---

[4]    Colo. Rev. Stat. § 18-3-102(1)(a) (1997) provides that "[a] person commits the crime of murder in the first degree if . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person[.]"

self-defense theory:[5] Aviles went to the mall armed with a handgun that was loaded with particularly lethal ammunition, called Seekamp a racial slur after participating (albeit minimally) in the design of a racially offensive t-shirt, made threatening verbal and hand gestures toward Seekamp, invited him to fight, and shot Seekamp despite having a potential escape route thru the parking lot.

We conclude that the district court's resolution of Aviles's sufficiency-of-the evidence claim is not debatable.

## IV. Post-Conviction Counsel

Aviles argues that he was denied the right to counsel in the state post-conviction proceedings. But "there is no federal constitutional right to post-conviction representation." *Yang*, 525 F.3d at 927 n.2.

## CONCLUSION

Because Aviles has not demonstrated that reasonable jurists could debate whether his federal habeas petition should have been resolved differently, or that the issues he presented deserve encouragement to proceed further, we DENY his application for a COA and DISMISS this appeal. Finally, we DENY his motion to proceed IFP on appeal. *See McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 812-13

---

[5] Colo. Rev. Stat. § 18-1-704(2)(a) (1997) provides that "[d]eadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate" and that he or she is in imminent danger of suffering great bodily injury or death. But self-defense is generally not available if the defendant provokes the victim, if the defendant "is the initial aggressor" and has not withdrawn from the encounter, or if the defendant and victim agreed to mutual combat. *Id.* § 18-1-704(3).

(10th Cir. 1997) (indicating that leave to proceed IFP requires both "a financial inability to pay the required fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised").

<div style="margin-left: 50%;">

Entered for the Court


David M. Ebel
Circuit Judge

</div>