The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 29, 2022

**2022COA111**

**No. 19CA1481, Peo v Martinez — Crimes — Reckless Manslaughter; Criminal Law — Jury Instructions — Affirmative Defenses — Traverse — Self-Defense — Use of Physical Force in Defense of a Person — Use of Deadly Physical Force Against an Intruder**

After the defendant in this criminal case was found guilty of reckless manslaughter, he appealed, arguing, among other issues, that the trial court erred by declining to instruct the jury that the force-against-intruders defense (known as the "make-my-day" defense) is an affirmative defense to reckless manslaughter.

A division of the court of appeals holds that, like ordinary self-defense, the force-against-intruders defense is an affirmative defense only with respect to offenses requiring a mental state of knowingly or intentionally. Applying the reasoning of *People v. Pickering*, 276 P.3d 553 (Colo. 2011), the division concludes that the affirmative defense of force-against-intruders is inconsistent

with conduct involving a reckless mental state, and, therefore, the trial court properly declined to give an affirmative defense instruction with respect to the reckless manslaughter charge.

Court of Appeals No. 19CA1481
Adams County District Court No. 18CR1636
Honorable Mark D. Warner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Justin Brendan Martinez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE HARRIS
Dunn and Johnson, JJ., concur

Announced September 29, 2022

Philip J. Weiser, Attorney General, Paul E. Koehler, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Karen Mahlman Gerash,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury found defendant, Justin Brendan Martinez, guilty of reckless manslaughter. On appeal, Martinez contends that the trial court erred in instructing the jury on various aspects of his self-defense claims.

¶ 2     In rejecting his contentions, we conclude that, like ordinary self-defense, the "force-against-intruders" defense (colloquially known as the "make-my-day" defense) is not an affirmative defense to a crime involving reckless conduct. We therefore affirm the judgment of conviction.

## I.   Background

¶ 3     On April 28, 2018, at about two a.m., Martinez shot and killed his best friend. The People charged him with second degree murder.

¶ 4     Martinez claimed to have acted in self-defense. Before trial, he moved to dismiss the charge, arguing that he was immune from prosecution under the force-against-intruders statute, *see* § 18-1-704.5, C.R.S. 2021. The trial court disagreed, and the case proceeded to trial.

¶ 5     The prosecution presented eyewitness accounts from two people: Armando Acosta, a mutual friend of Martinez and the

1

victim; and Martinez, who did not testify but whose police interviews were shown to the jury.

¶ 6   According to Acosta, after a night of drinking, Martinez, the victim, and Acosta arrived back at Martinez's house. Martinez wanted to drive to another bar, but the victim thought Martinez was too drunk to drive. When Martinez got behind the wheel, the victim reached through the window, punched him in the face, and wrestled him out of the car.

¶ 7   Martinez stumbled into the house, followed first by the victim, and then, a minute later, by Acosta. When Acosta walked in, he saw Martinez lying on the bedroom floor and the victim kicking him. Acosta told them to "cool their shit," and the victim started to walk out of the room. Martinez grabbed a gun from the corner, turned, and fired a shot that hit the back of the victim's knee. Acosta testified that at the time Martinez grabbed the gun, the assault was over and, when he fired the shot, the victim was "already out the door" of the bedroom.

¶ 8   Acosta recalled that Martinez fired the gun toward the floor, and Acosta was surprised that the shot hit the victim — he

characterized the incident as a "freak accident."  But he was also surprised that Martinez "even went to get a gun" in the first place.

¶ 9      Martinez's account was somewhat different.  Initially, he told police that, as the victim pursued him into the house, he grabbed a gun from behind the front door and the gun accidentally fired by itself.  Later, though, he said that after the victim assaulted him outside, he ran straight into his bedroom, grabbed his gun, and, as he turned around, he "gave a warning shot" toward the ground, accidentally hitting the victim in the leg.  Throughout his interviews with police, Martinez emphasized that his memory of the incident was poor and encouraged officers to speak to Acosta, who "was there for everything."

¶ 10     It was undisputed that when police arrived, they found the victim lying in the hallway outside the bedroom.  Within half an hour, the victim had bled to death from the gunshot wound.

¶ 11     Martinez's specific theory of defense was that he had grabbed the gun in self-defense and then, with no intent to hit the victim, accidentally shot him in the leg.  The jury rejected the charge of second degree murder and convicted Martinez of reckless manslaughter.

## II.  Self-Defense Jury Instructions

¶ 12     The trial court agreed to instruct the jury on self-defense. Accordingly, it gave a series of instructions concerning Martinez's right to use deadly force to defend himself.

¶ 13     On appeal, Martinez contends that the court erred by (1) declining to instruct the jury that the force-against-intruders defense is an affirmative defense with respect to reckless manslaughter; (2) failing to sua sponte include an instruction on a defendant's right to use non-deadly physical force; and (3) instructing the jury that Martinez's intoxication was irrelevant to his self-defense claim.

¶ 14     "Trial courts have a duty to instruct the jury on all matters of law applicable to the case." *Roberts v. People*, 2017 CO 76, ¶ 18. We review jury instructions de novo to determine whether, as a whole, they accurately informed the jury of the governing law. *See People v. Neckel*, 2019 COA 69, ¶ 26. And we review the court's decision to give or not to give a particular instruction for an abuse of discretion. *See People v. Maloy*, 2020 COA 71, ¶ 54.

## A. Force-Against-Intruders Instruction

¶ 15    In Colorado, a person has a right to use deadly force to defend himself when he reasonably believes that he is in imminent danger of being killed or sustaining serious bodily injury and reasonably believes that a lesser degree of force is inadequate.  *See* § 18-1-704(1)-(2), C.R.S. 2021.

¶ 16    The force-against-intruders statute expands the right to self-defense in cases involving an intruder's knowing unlawful entry into a home.  Under that statute, as long as the occupant of the home has a reasonable belief that the intruder has committed or intends to commit a crime in addition to the unlawful entry and also reasonably believes that the intruder might use any physical force, no matter how slight, against any person, the occupant "is justified in using any degree of physical force, including deadly physical force," against the intruder.  § 18-1-704.5(2).

¶ 17    Self-defense can be either an affirmative defense or a traverse. An affirmative defense admits the defendant's commission of the charged offense but seeks to justify or excuse the conduct.  *Pearson v. People*, 2022 CO 4, ¶ 18.  A traverse, on the other hand, refutes

the possibility that the defendant committed the charged offense by negating one or more elements of the offense. *Roberts*, ¶ 21.

¶ 18     Whether self-defense is an affirmative defense or a traverse determines the prosecution's burden of proof. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011). When the evidence raises the issue of an affirmative defense, the affirmative defense becomes an additional element, and the trial court must instruct the jury that the prosecution bears the burden to prove beyond a reasonable doubt that the defense does not apply. *Id.*; *see also People v. Huckleberry*, 768 P.2d 1235, 1239 (Colo. 1989) (explaining why the prosecution bears the burden to disprove an affirmative defense). In contrast, when the evidence raises the issue of an elemental traverse, the jury may consider evidence that the defendant acted in self-defense in determining whether the prosecution proved each element of the offense beyond a reasonable doubt, "but the defendant is not entitled to an affirmative defense instruction." *Pickering*, 276 P.3d at 555.

¶ 19     In *Pickering*, the supreme court concluded that self-defense is an affirmative defense with respect to crimes requiring intent or knowledge, such as second degree murder, but it is a traverse with

respect to crimes involving recklessness, including reckless manslaughter. *Id.* at 555-56. While a person can act knowingly and in self-defense, the court reasoned, "it is impossible for a person to act both recklessly and in self-defense, because self-defense requires one to act justifiably . . . while recklessness requires one to act with conscious disregard of an unjustifiable risk." *Id.* at 556.

¶ 20 Consistent with these principles, the trial court instructed the jury that self-defense and the force-against-intruders defense operated as affirmative defenses with respect to the second degree murder charge, and therefore the prosecution had the burden to disprove those defenses beyond a reasonable doubt. With respect to the reckless manslaughter charge, however, the court instructed that the prosecution had to prove all elements of the offense beyond a reasonable doubt, but it did not have an additional burden to disprove the defenses.[1] Still, the instruction explained that "a

---

[1] To the extent Martinez argues that this instruction was improper, the argument is foreclosed by *People v. Pickering*, 276 P.3d 553, 557 (Colo. 2011), which, as Martinez acknowledges, affirmed the use of a substantially identical jury instruction.

person does not act recklessly . . . if his conduct is legally justified as set forth" in the self-defense and force-against-intruder instructions.

¶ 21     Martinez acknowledges that self-defense is not an affirmative defense to reckless manslaughter.  But he says that the force-against-intruders defense, unlike ordinary self-defense, is not inconsistent with reckless conduct and therefore is an affirmative defense to the charge.

¶ 22     As Martinez observes, the self-defense statute authorizes only proportionate force against an assailant.  In other words, a person's use of force is justified only if the person uses no more force than is reasonably necessary to repel the assailant.  *See* § 18-1-704(1)-(2).  The proportionate force requirement makes self-defense inconsistent with reckless conduct, Martinez argues, because it prohibits a person from creating or disregarding an unreasonable and unjustifiable risk of harm to others, while recklessness specifically requires that a person consciously disregard a "substantial and unjustifiable risk" of harm.  § 18-1-501(8), C.R.S. 2021.

¶ 23    The force-against-intruders statute, however, does not include a proportionate force requirement: once the statutory criteria are satisfied, the occupant of a home can use *any* amount of force against the intruder. *See* § 18-1-704.5(2). According to Martinez, this statutory difference means that an occupant could "choose to employ an unnecessary and grossly disproportionate degree of force, thereby consciously disregarding a substantial and unjustifiable risk of harm to the intruder." It follows, he says, that the force-against-intruders defense is not inconsistent with reckless conduct.

¶ 24    That argument does not hold up. Under the force-against-intruders statute, any risk of harm to the intruder is, by definition, "justified." *See id.*

¶ 25    The General Assembly has authority to delineate statutory defenses. *See People v. Guenther*, 740 P.2d 971, 977 (Colo. 1987). In enacting the force-against-intruders statute, the General Assembly determined that one way to protect citizens' "right to expect absolute safety within their own homes" was to expand an occupant's right to use deadly force against a person who unlawfully enters a home. *See* § 18-1-704.5; *see also People v. Rau,*

9

2022 CO 3, ¶ 3. Accordingly, once the specified statutory conditions are met, the occupant of a home is justified in using deadly force against the intruder, even if that amount of force is disproportionate to any force used by the intruder and therefore objectively unnecessary to repel any imminent threat.

¶ 26　True, the use of disproportionate force creates a substantial risk of harm to the intruder. But the risk of harm is *unjustifiable* only if the occupant's use of deadly force "constitutes a gross deviation from the reasonable standard of care," *see People v. Hall*, 999 P.2d 207, 216 (Colo. 2000), and it cannot be a gross deviation because the statute specifically authorizes the occupant's conduct. Put another way, the legislature has determined that the risk of harm (including death) to certain intruders (those who have committed or intend to commit a crime in the home and who might use physical force against any person) from the occupant's use of deadly force is justified. *See Mata-Medina v. People*, 71 P.3d 973, 978 (Colo. 2003) (Whether a risk is unjustifiable depends on the nature of the risk "in relation to the nature and purpose of the actor's conduct.").

¶ 27    Therefore, contrary to Martinez's argument, the force-against-intruders statute does not allow an occupant to consciously disregard a substantial and *unjustifiable* risk of harm to the intruder.  Instead, like ordinary self-defense, the force-against-intruders statute requires that the occupant act reasonably and justifiably.  What constitutes reasonable and justifiable conduct, though, is statutorily expanded when an intruder, bent on committing a crime and using physical force against an occupant, unlawfully enters a person's home.  And because a person cannot act both justifiably under the force-against-intruders statute and recklessly, the force-against-intruders defense does not operate as an affirmative defense to reckless manslaughter.  *See Pickering*, 276 P.3d at 556.

## B.    Non-Deadly Force Instruction

¶ 28    A person has a right to use non-deadly physical force against another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by the other person, and he can use a degree of force that he reasonably believes is necessary for that purpose.  § 18-1-704(1).  But, as we have noted, to be justified in using deadly physical force, a person

11

must reasonably (and actually) believe that he is in imminent danger of being killed or sustaining serious bodily injury and must reasonably believe that a lesser degree of force is inadequate. § 18-1-704(2).

¶ 29 The trial court instructed the jury regarding Martinez's right to use deadly physical force in self-defense. Martinez contends that the trial court erred by failing to also instruct the jury regarding his broader right to use non-deadly physical force.

¶ 30 "Deadly physical force" means "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." § 18-1-901(3)(d), C.R.S. 2021. Whether physical force is properly considered "deadly" does not turn on the subjective intent of the person using the force but rather on the "objective likelihood that, in the absence of some intervening circumstance, a result will occur." *People v. Opana,* 2017 CO 56, ¶ 14. The question is whether the physical force used by the defendant "would normally be expected to, and in fact did, produce death." *Id.* at ¶ 16.

¶ 31 The evidence at trial established that Martinez shot the victim with a 12-gauge shotgun from a distance of about three feet. The

shotgun was loaded with birdshot, so instead of discharging a single projectile, the gun fired a shell loaded with tiny pellets. The pellets penetrated as one big mass, creating a two-and-a-half-inch hole in the back of the victim's knee. Then the pellets lacerated the femoral artery, causing the victim to quickly bleed to death. An expert testified that "this type of wound" was "potentially survivable," but only if the victim received "very prompt" medical attention.

¶ 32    Martinez did not request an instruction on the use of non-deadly physical force. Thus, reversal is not warranted in the absence of plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. "Plain error is error that is 'obvious,' 'substantial,' and 'grave.'" *People v. Malloy*, 178 P.3d 1283, 1288 (Colo. App. 2008) (citation omitted). To qualify as obvious, the error must be one that is so "clear-cut," a trial judge "should be able to avoid it without benefit of objection." *People v. Ujaama*, 2012 COA 36, ¶ 42 (citation omitted).

¶ 33    Even assuming the court erred by not giving an instruction concerning the right to use non-deadly force, we cannot say, in light of the evidence, that the error was obvious. Martinez fired a shotgun at close range into a part of the victim's body that,

13

according to the expert, "has large caliber arteries and veins," causing rapid and profuse bleeding. In the absence of any objection or a tendered alternative instruction, the court could reasonably have concluded that there was no serious dispute that Martinez's conduct was objectively likely to produce death.

### C. Totality of the Circumstances Instruction

¶ 34 The court instructed the jury that intoxication was irrelevant to Martinez's use-of-force defenses. As the court explained in the instruction, the defenses require that the "actor using force in defense acted as an objectively reasonable person," and the "reasonable person standard requires the actor using physical force against another in defense to appraise the situation as would a reasonable sober person."

¶ 35 Martinez argues that the instruction misstated the law because, in evaluating the reasonableness of his decision to use force, the jury had to consider the totality of the circumstances, including the fact that he was drunk.

¶ 36 While self-defense takes into account the defendant's actual belief or state of mind, the defense ultimately requires that a reasonable person would have believed and acted as the defendant

did.  *People v. Vasquez*, 148 P.3d 326, 330 (Colo. App. 2006).  A "reasonable person" means "an objectively reasonable individual and not a subjectively reasonable one possessing the individual defendant's personality traits or defects."  *People v. Darbe*, 62 P.3d 1006, 1011 (Colo. App. 2002).  Therefore, the reasonable person standard requires a defendant to appraise the situation as would a reasonable sober person.  *Vasquez*, 148 P.3d at 330.  The instruction was thus an accurate statement of the law.

### III.    Cumulative Error

¶ 37    Martinez is not entitled to reversal based on cumulative error.  "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights.  *Howard-Walker v. People*, 2019 CO 69, ¶ 25.  Here, we have assumed a single error that did not amount to plain error.  Therefore, reversal is not warranted.  *See People v. Thames*, 2019 COA 124, ¶ 69 ("[A] single error is insufficient to reverse under the cumulative error standard.").

### IV.    Conclusion

¶ 38    The judgment is affirmed.

JUDGE DUNN and JUDGE JOHNSON concur.

15