The **PEOPLE** of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Jesse A. **DEROULET**, a/k/a Jesse A. Proulet, a/k/a Jesse A. Peroulelt, Defendant–Appellant and Cross–Appellee.

No. 98CA0715.

Colorado Court of Appeals, Div. V.

June 8, 2000.

Rehearing Denied July 13, 2000.

Certiorari Granted Jan. 16, 2001.

class three misdemeanor; and two counts of being an habitual criminal. By cross-appeal, the People challenge the legality of the sentence the court imposed following a proportionality review. We affirm.

The criminal charges against defendant stem from two incidents involving his former girlfriend. The second incident occurred while defendant was on bond following his arrest relating to the first incident.

## I.

Defendant first contends that the trial court erred by allowing testimony regarding his having received a loan from the victim's best friend and having secured the loan with what he falsely represented to be crack cocaine. We perceive no basis for reversal.

On cross-examination of the victim by defense counsel, the following exchange took place:

Q: Isn't it true that you borrowed money from [the victim's friend] to help bail [defendant] out of jail in February [1997] when he was arrested for the [first incident]?

A: No. I believe that she might—no. No. That's not what the money was for.

Q: *What was the money for, ma'am?*

A: *She borrowed money from him and in return he gave her what she thought was cocaine and it wasn't. It was—that's what the money was for.*

Q: You were present during this discussion?

A: Uh-huh

Q: *But yet you have never been with [defendant] how would you be present during this discussion?*

A: *This is not for the [first incident] that you think she lent money for. This is money before that.*

Q: *This is in February 1997 that we're talking about.*

A: *No. She has lent money before and we were still dating.*

. . . .

Q: I am talking about February 1997. Did you borrow $100 to use for his bail money from [the victim's friend]?

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado; Jeanne M. Smith, District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

David F. Vela, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge KAPELKE.

Defendant, Jessie A. Deroulet, appeals from the judgment of conviction entered on a jury verdict finding him guilty of first degree burglary, a class three felony; third degree assault, a class one misdemeanor; theft, a class three misdemeanor; harassment, a

A: No.

(emphasis added).

On re-direct examination, the following colloquy ensued between the prosecutor and the victim:

Q: Does [the victim's friend] loan you money?

A: All the time.

Q: How much?

A: Well, depends on how much I need but normally like $20 she loans me all the time.

Q: Have you ever borrowed money in an amount to bond the [d]efendant out?

A: No.

Q: Okay. *Was there money lent by [the victim's friend] to the [d]efendant at some point in time?*

A: Yes.

Q: *Was that before or after November of '96?*

A: Before.

Q: Okay. And how much money was that?

A: $150.

Q: *And exactly what was that for?*

[Defense Counsel]: *Object, Judge. It's not the question that was asked. I was directing my questions to February of 1997 time frame and we're getting into areas that are improper trying to—*

[The Prosecutor]: *Judge, he brought this area out. I think it's fair to explore it and explain it to the jury.*

The Court: *The objection is overruled. I think the topic is raised in cross-examination and accordingly I will allow this answer.*

A: *It was raised for drugs.*

Q: Okay. Your friend ... thought she was going to give money to the Defendant for drugs?

A: Yes.

Q: And I think you said that the Defendant gave her something else instead? Soap?

A: Something of that sort. Something fake she told me.

Q: Okay. Uh, did you ever indicate to anyone that you bonded the Defendant out?

A: No.

(emphasis added).

Later, defense counsel presented testimony by two witnesses indicating that the victim had borrowed, or intended to borrow, money from her best friend to post bond for defendant.

Thereafter, the prosecutor informed the court that she intended to call the victim's friend in rebuttal to testify that she had not made a loan to the victim or to the defendant for the purposes of posting defendant's bail, and that the only loan she had made to defendant was one for which he had given her what he falsely claimed to be cocaine as collateral. The court allowed the testimony over defense counsel's objection that the prejudicial effect of the testimony would substantially outweigh its probative value.

The court stated that "the existence of this loan and whether the money went to bail or not to bail has become one of the credibility issues in the case," and that "in fairness ... the context of the loan has to be explained."

The following colloquy took place during defense counsel's cross-examination of the victim's friend:

Q: You testified about ... loaning some money to [defendant] in October.

A: Before I went to rehab.

Q: When did you go to rehab?

A: October 12, 1996.

Q: And you met him when?

A: Some[thing] like January or February of '96.

Q: Okay. So but the loan of money supposedly took place around right before you went into the rehab?

A: Somewhere, in there, yes.

Q: September, October time frame?

A: Somewhere in there.

Q: So you had a drug problem ... and you wanted some drugs apparently as you took [the substance] as collateral?

A: I—no. I feel that's definitely misunderstood.

Q: Okay.

A: I didn't really even want it. Coke—crack cocaine was not my forte.

Q: What was your forte?

A: I like honestly crystal meth. I was quite addicted to it.

. . . .

Q: And the amount of money that you are saying [defendant] borrowed from you was $150, correct? .

A: Yes.

Q: And you [were] doing this as a favor for [the victim], correct.

A: And him.

Q: And if [the victim] told stories that she borrowed $150 from you to help bail out [defendant] that would be a lie?

A: I would say other people . . .

Q: Tell the jury.

A: I would say other people could easily lie about that themselves.

Q: Just answer the question, ma'am. Would that be a lie if she told other people that she borrowed $150 from you to help bail out [defendant]. Would that be a lie?

A: Yes, it would.

■ If one party offers evidence that would create a false or misleading impression, the other party may explain or contradict that impression through evidence that might otherwise be inadmissible. *See People v. Rollins,* 892 P.2d 866 (Colo.1995).

■ Here, defense counsel asked the victim during cross-examination if she had borrowed money from her best friend to "help bail [defendant] out of jail in February when he was arrested for the first incident." The victim indicated that had not been the purpose of the loan. It was in response to defense counsel's follow-up question as to the purpose of the loan that the victim referred to the friend's having made a loan to defendant which had been secured by what the victim's friend purportedly believed to be cocaine.

Rather than moving to strike the victim's testimony as nonresponsive and requesting that the jury be instructed to disregard it, defense counsel explored the issue further by asking the victim how she could have known about the purported transaction when, according to her earlier testimony, she was no longer romantically involved with defendant at the time.

To have precluded the prosecution from further questioning on the issue might have created a false impression for the jury, particularly in light of the testimony defendant adduced from other witnesses to the effect that either this or some other loan had in fact been made to secure defendant's release on bond following his arrest in connection with the first incident. The prosecution was entitled to show the context and particulars of the loan that had in fact been made to defendant by the victim's friend, and to demonstrate that the loan had not been made for the purpose of posting defendant's bail.

■ Defendant also argues that evidence concerning the alleged loan transaction was improperly admitted because it was evidence of prior misconduct, which could be allowed only upon compliance with the procedural requirements set forth in *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

However, because it was the defense that initially adduced the evidence, the trial court was not required to comply with the procedural requirements under CRE 404(b) or *Spoto. See People v. Rollins, supra.*

■ Also, under the circumstances, we reject defendant's assertion that the evidence was inadmissible because its probative value was substantially outweighed by its unfair prejudicial effect.

## II.

■ Defendant next contends that the trial court erred by admitting evidence of the alleged violent character of certain defense witnesses who had testified as to defendant's own nonviolent character. Again, we perceive no basis for reversal.

Three defense witnesses testified that defendant was nonviolent by nature. Later, in its direct examination of the victim's best friend, the prosecution asked her if she knew several individuals, including the two witnesses who had opined as to defendant's

nonviolent character. The following dialogue then occurred:

[Prosecutor]: Okay. And do you have an opinion as to the nature of that group as far as whether or not they were known to threaten people or be violent?

[Defendant]: Yeah, uh?

[Prosecutor]: Okay.

[Defense Counsel]: I object, Judge. I fail to see how this is relevant at all.

The Court: Why is this relevant with regard to the group described and identified?

[Prosecutor]: Because each of them testified what their belief of the [d]efendant's violence is. And if they themselves are violent it changes what their perception of the [d]efendant is. If he is a like character to them if they don't believe him to be violent they don't believe themselves to be violent.

The Court: All right. Overruled. Go ahead.

[Prosecutor]: Go ahead.

The witness went on to state that she believed that "the group as a whole is fairly violent." She also said that she had been intimidated by two of the named individuals, one of whom had testified as to defendant's nonviolent character.

■■ Defendant was entitled to introduce testimony regarding his nonviolent character pursuant to CRE 404(a)(1) and CRE 405(a), and the prosecution was entitled to rebut that testimony by evidence of specific instances of violent conduct by defendant. *See* CRE 405(a).

Here, however, the court permitted the prosecution to present evidence regarding the violent character of defendant's *witnesses*, purportedly in order to challenge their testimony regarding defendant's nonviolent character. However, because the violent character of the witnesses had not been placed in issue by defendant, we conclude that the testimony constituted an improper use of character evidence.

■ This conclusion, however, does not end our inquiry. In the trial court, defendant did not object to the testimony on the basis that it was improper character evidence, but rather on relevancy grounds. Accordingly, because defendant did not object on the grounds he now asserts on appeal, our review is governed by the plain error standard. *See* Crim. P. 52(b); *People v. Hampton,* 746 P.2d 947 (Colo.1987)(failure to object in district court on grounds asserted on appeal is deemed to waive the objection unless the alleged error amounts to plain error).

■ Under the plain error standard, we may reverse the trial court's decision only if, upon review of the entire record, it can be said with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Rollins, supra.*

Here, the record shows that the prosecution had presented evidence by other witnesses as to specific examples of defendant's violent character, thus independently rebutting the character testimony offered by the three defense witnesses. There was testimony, for example, that defendant had punched a man on one occasion and that he had broken the victim's ribs on another occasion.

Therefore, under these circumstances, we conclude that the admission of the improper character evidence did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.

Accordingly, we perceive no basis for reversal.

### III.

■ Defendant next contends that the trial court erred by failing to secure a knowing, intelligent, and voluntary waiver of his constitutional rights before allowing his counsel to admit to the prior convictions that formed the basis of the two habitual criminal counts. Again, we disagree.

As noted, defendant was charged with two counts of being a habitual criminal. At a hearing prior to the habitual criminal adjudication, defense counsel, in the presence of defendant, indicated to the court that he had reviewed with defendant "the PEN Packs" and the underlying convictions at issue. He

further stated that he had discussed the issues and the evidence with defendant and that defendant was prepared to admit the two habitual criminal counts. Defense counsel then requested a proportionality hearing. After confirming with defense counsel that defendant was admitting the two habitual criminal counts, the court granted defendant's request for the hearing.

At the proportionality hearing, defendant testified that he had been previously convicted of the two felonies supporting the habitual criminal counts: one conviction for forgery and the other for attempted possession of a controlled substance.

At no point during the hearing on the habitual criminal counts or the subsequent three sentencing hearings, however, did the court address defendant himself or advise him of the nature of the habitual criminal charges or regarding any rights he would be waiving by admitting the prior convictions.

Section 16–13–103(3), C.R.S.1999, provides, as pertinent here, that:

If the defendant admits to having been convicted as alleged in any count charging a previous conviction, no proof of such previous conviction is required. Such admission shall constitute conclusive proof in determining whether the defendant has been previously convicted of an alleged felony and the court shall sentence the defendant in accordance with section 16–13–101.

 The habitual criminal statute does not establish a substantive offense. Rather, it prescribes circumstances under which a defendant found guilty of a specific crime may be punished more severely because of previous criminality. The statute creates a sentencing enhancement for the underlying felony. As such, it is to be contrasted with substantive offenses. *People v. Edwards*, 971 P.2d 1080 (Colo.App.1998).

Here, in support of his contention that his guilty plea had not been voluntarily and intelligently entered, defendant relies upon language in *People v. Quintana*, 634 P.2d 413 (Colo.1981), and *Moore v. People*, 707 P.2d 990 (Colo.1985). In *People v. Quintana, supra*, 634 P.2d at 419, the court stated that an adjudication of habitual criminality must be made "in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence." Similarly, in *Moore v. People, supra*, 707 P.2d at 994, the court, noting the special nature of the habitual criminal adjudication process, concluded that "any waiver of the jury trial guaranteed in habitual criminal adjudications must be governed by the same constitutional principles associated with a waiver of the right to a jury trial on felony criminal charges."

As a division of this court observed in *People v. Edwards, supra*, however, when *Quintana* and *Moore* were decided there was a statutory right to a jury determination of habitual criminal status. Based on the statutory right existing at the time, the supreme court held that habitual criminal determinations must be made according to traditional constitutional principles.

In 1995, however, the statute was amended to eliminate the provision for jury trials in habitual criminal proceedings. Thus, following that amendment, the right to jury trial on the habitual criminality issue ceased to exist. *People v. Edwards, supra*.

Under § 16–13–103(3), defendant's admission to the prior felony convictions acted as conclusive proof of the two habitual counts, thus enabling the court to proceed to the sentencing phase. *See People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (Colo.1976) ("Once the defendant admitted that he had suffered the prior convictions as charged, the trial judge was empowered to sentence the defendant as an habitual offender following conviction on the substantive charge.").

Thus, in light of the fact that defendant twice admitted to the prior felony convictions (once through counsel and once by his own statement given under oath), any error by the trial court in failing to obtain from him an explicit personal waiver of rights was harmless beyond a reasonable doubt.

## IV.

 With respect to the cross-appeal, the People first contend that defendant was not entitled to a proportionality hearing under

the habitual criminal sentencing statute. Specifically, they urge that proportionality is already built into the statutory scheme. We disagree.

Under § 18–1–105(1)(a)(V)(A), C.R.S.1999, the presumptive range of penalties defendant faced was between four years imprisonment to twelve years imprisonment, plus five years as the mandatory period of parole.

As noted, defendant was also convicted of two prior felonies which supported the habitual criminal counts. Section 16–13–101(1.5), C.R.S.1999, provides that:

> Every person convicted in this state of any class 1, 2, 3, 4, or 5 felony who, within 10 years of the date of the commission of that offense, has been twice previously convicted of a felony shall be adjudged an habitual criminal and shall be punished for the felony offense of which such person is convicted by confinement in a correctional facility for a term of three times the maximum of the presumptive range pursuant to § 18–1–105, C.R.S., for the class of felony of which such person is convicted.

Thus, because of the adjudication on the two habitual criminal counts, the statute provided for a sentence of three times the twelve-year maximum in the presumptive range for the class three felony of first degree burglary, a total of 36 years. Instead, following the proportionality review, the court imposed a sentence of 22 years.

The court noted the serious nature of the first degree burglary conviction, but also considered the nature of the two prior felonies supporting the habitual criminal conviction (forgery and attempted possession of a controlled substance). The court found that "it would be unduly harsh given the nature of the underlying two felonies ... to take the maximum range for a first degree burglary[,] 12 years[,] and triple it." The court then sentenced defendant to 22 years in the custody of the department of corrections plus a five-year mandatory period of parole.

The People contend that a proportionality review is constitutionally required only in cases in which life or capital sentences have been imposed. Their contention was recently considered in *People v. Merchant,* 983 P.2d 108 (Colo.App.1999). In *Merchant,* a division of this court, noting that no sentence is *per se* constitutional, rejected the People's argument that the habitual criminal statute, as revised, already incorporates proportionality considerations and that a defendant therefore has no right to a proportionality review in such a case.

We agree with the analysis and holding in *Merchant* and therefore reject the People's contention.

We also reject the People's assertion that the recent opinion by a division of this court in *People v. Close,* 22 P.3d 933 (2000), compels a holding here that the court lacked authority to conduct a proportionality review. In *Close,* the division held that there was no authority for proportionality review where the defendant had received the statutory minimum sentence for each of his crimes. There, unlike here, the defendant was not sentenced pursuant to the habitual offender statutes, but instead received a total sentence of 60 years for "multiple mandatory consecutive violent crimes."

■ As noted, no sentence is *per se* constitutional. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Thus, to the extent *Close* can be read to preclude proportionality review altogether where a defendant has received a statutorily-mandated sentence, we decline to follow it.

■ In light of our disposition, we also reject the People's contention that the trial court was obligated to impose the statutorily-prescribed sentence of 36 years. Having considered the proportionality of the statutory sentence and determined that the 36–year sentence was unconstitutionally harsh under the circumstances, the court could properly impose the lesser sentence of 22 years. Accordingly, we perceive no error.

Judgment affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.