22CA1225 Peo v Condit 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1225
Jefferson County District Court No. 20CR3062
Honorable Philip J. McNulty, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Tyler Ray Condit,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Tyler Ray Condit appeals the judgment entered on a jury verdict finding him guilty of second degree murder, tampering with a deceased body, and tampering with evidence.  He contends that (1) the district court plainly erred by failing to instruct the jury on non-deadly physical force self-defense as an affirmative defense to murder; (2) the court reversibly erred by allowing the prosecution to introduce inadmissible character evidence about the victim; and (3) the cumulative effect of these errors deprived him of a fair trial.  We disagree with all three contentions and affirm the judgment.

## I.    Background

¶ 2    In 2020, Condit and his roommate were involved in an altercation that led to his roommate's death.  Several days later, Condit told his uncle that he got in a fight with the victim and "stabbed him in the neck with a knife"; then "he cut out the carpet, poured Clorox on the [blood] stains," "wrapped up the body[,] and took it up to the mountains" to dispose of it and the knife.

¶ 3    The police recovered the body, and a forensic pathologist performed an autopsy.  In addition to the fatal neck wound, the pathologist was able to identify two stab wounds on the victim's foot and a "defensive" knife wound on the victim's hand.  The People

1

charged Condit with first degree murder, tampering with a deceased human body, and tampering with physical evidence.

¶ 4      At trial, Condit testified that he killed his roommate in self-defense.  He claimed that he and the victim took LSD together and were hanging out, watching videos and listening to music.  Then, seemingly out of nowhere, the victim confronted him about sleeping with his cousin's girlfriend.  The dispute escalated, and the victim stood up and grabbed a knife.  Condit tried to get past the victim to escape their apartment, but the victim swung the knife at him.  Condit testified that, at that point, "I grabbed [the victim's] arm and we . . . wrestled a little bit.  And then I . . . took him down. I tripped him and knocked him down."  He clarified that he grabbed the victim's arm that was holding the knife at the wrist with one hand, placed his other hand on the victim's inner elbow, and then tripped the victim backwards onto a bean bag chair, falling on top of him.  He said he never grabbed the knife, he did not stab the victim, and he did not intend to kill the victim when he tripped him.

¶ 5      Condit claimed he did not see the knife slice the victim's throat.  But after he realized the victim had been cut, he attempted to staunch the bleeding using his shirt and a towel.  His efforts

were in vain, and the victim died from the knife wound. Condit admitted that he covered up evidence and dumped the victim's body to thwart any investigation into his death because he "didn't want to get blamed for killing" the victim, and, in his experience, "it doesn't matter if you're right or wrong, when the cops come, they take you away."

¶ 6 The jury rejected Condit's claim of self-defense and found him guilty of second degree murder (as a lesser included offense of first degree murder) and both tampering charges.

## II. Non-Deadly Physical Force Self-Defense

¶ 7 Condit first contends that the district court plainly erred by failing to instruct the jury on non-deadly physical force self-defense as an affirmative defense. We conclude that, assuming the court erred, the error was not obvious and therefore was not plain.

### A. Self-Defense Jury Instructions

¶ 8 A person is justified in using non-deadly physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force that he reasonably believes to be necessary for that purpose. § 18-1-704(1), C.R.S.

3

2024.  But, as pertinent here, a person may use deadly physical force in self-defense only when (1) he has reasonable grounds to believe, and does believe, that he is in imminent danger of being killed or of receiving great bodily injury; and (2) he reasonably believes that a lesser degree of force is inadequate.  § 18-1-704(2).

¶ 9     "Deadly physical force" is defined as "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death."  § 18-1-901(3)(d), C.R.S. 2024.  "Whether physical force is properly considered 'deadly' does not turn on the subjective intent of the person using the force but rather on the 'objective likelihood that, in the absence of some intervening circumstance, a result will occur.'"  *People v. Martinez*, 2022 COA 111, ¶ 30 (quoting *People v. Opana*, 2017 CO 56, ¶ 14), *aff'd*, 2024 CO 48.  The question is whether the physical force used "would normally be expected to, and in fact did, produce death." *Opana*, ¶ 16.

¶ 10    Turning to the relevant instruction in this case, the district court only instructed the jury on self-defense using deadly physical force as an affirmative defense to first and second degree murder. Condit's attorney never requested, and consequently, the court did

not give, an instruction on the use of non-deadly physical force in self-defense.

### B.      Applicable Law and Standard of Review

¶ 11      A district court must instruct the jury on all matters of law applicable to the case. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). The court must give an instruction embodying a defendant's theory of the case if the record contains any evidence to support it. *People v. Omwanda*, 2014 COA 128, ¶ 40.

¶ 12      We review jury instructions de novo to determine whether the instructions, as a whole, accurately inform the jury of the governing law. *People v. Theus-Roberts*, 2015 COA 32, ¶ 18. If they do, the district court has substantial discretion in formulating the instructions and deciding whether additional instructions are required. *Id.* A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misapplication of the law. *People v. Maloy*, 2020 COA 71, ¶ 54.

¶ 13      Because Condit's attorney did not request a non-deadly physical force self-defense instruction, we will reverse only if there was plain error. *See Martinez*, 2022 COA 111, ¶ 32. Plain error is an error that is both obvious and substantial. *Hagos v. People*,

2012 CO 63, ¶ 14. An error is "obvious" if it is so clear cut that the judge should have been able to avoid it without the benefit of an objection. *Scott v. People*, 2017 CO 16, ¶ 16, *abrogated on other grounds by Whiteaker v. People*, 2024 CO 25, ¶ 25. "For an error to be this obvious, the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.'" *Id.* (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40). An error is "substantial" if it so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14.

### C. Analysis

¶ 14    Assuming, without deciding, that the district court erred by failing to give an instruction on self-defense using non-deadly physical force as an affirmative defense, we conclude that the error was not obvious for two reasons.

¶ 15    First, it was not obvious that there was a dispute about whether Condit employed deadly or non-deadly physical force. *See People v. Vasquez*, 148 P.3d 326, 330 (Colo. App. 2006); COLJI-Crim. H:12 cmt. 4 ("In a case where the victim dies *and there is a factual dispute* concerning whether the defendant used ordinary

6

physical force or deadly physical force . . . , the jury should also be allowed to consider the applicability of self-defense principles relating to the use of ordinary physical force.") (emphasis added). It was undisputed at trial that the victim died from a knife wound to his throat and that Condit caused this wound. The forensic pathologist testified that this type of wound, if it hits major blood vessels, will typically cause a quick death. Therefore, there is no question that the knife slicing the victim's neck was a "force, the intended, natural, and probable consequence of which [wa]s to produce death, and which d[id], in fact, produce death" and thus constituted deadly physical force. § 18-1-901(3)(d).

¶ 16    On appeal, Condit characterizes the physical force in this case as "[g]rabbing and tripping," not causing the victim to slice his own throat. But it was not obvious that this was the correct characterization of the force because Condit's subjective intent as to the force he employed does not dictate whether that force was deadly. *See Martinez*, 2022 COA 111, ¶ 30; *Opana*, ¶ 17 ("The physical force *actually inflicted by the defendant upon the victim* could not reasonably be characterized as anything other than force,

7

the intended, natural, and probable consequence of which was to produce death . . . .") (emphasis added).

¶ 17　Moreover, Condit's counsel did not present this characterization to the district court, did not tender a non-deadly physical force jury instruction, and did not raise the issue at the jury instruction conference.  The district court "is not an advocate and need not serve as counsel for either party," *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo. 1998), and "[a] court's general duty to instruct does not extend to crafting theory of the case instructions when defense counsel fails to do so," *People v. Wade*, 2024 COA 13, ¶ 11.  "In the absence of any objection or a tendered alternative instruction, the court could reasonably have concluded that there was no serious dispute that [Condit's] conduct was objectively likely to produce death."  *Martinez*, 2022 COA 111, ¶ 33; *see Scott*, ¶ 16.

¶ 18　Second, *People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011), on which Condit primarily relies, does not support his argument that the district court plainly erred by failing to give the non-deadly physical force self-defense instruction as an affirmative defense.  "Self-defense can be either an affirmative defense or a traverse."

*Martinez*, 2022 COA 111, ¶ 17. "An affirmative defense admits the defendant's commission of the charged offense but seeks to justify or excuse the conduct." *Id.*; *see also People v. Huckleberry*, 768 P.2d 1235, 1239 (Colo. 1989) ("[T]he essence of an affirmative defense is the admission of the conduct giving rise to the charged offense."). "A traverse, on the other hand, refutes the possibility that the defendant committed the charged offense by negating one or more elements of the offense." *Martinez*, 2022 COA 111, ¶ 17.

¶ 19    A person commits murder in the second degree if, as relevant here, he "knowingly causes the death of a person." § 18-3-103(1)(a), C.R.S. 2024. "A person acts 'knowingly' or 'willfully', with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2024. Put together, to commit second degree murder, a person must be "aware that his conduct is practically certain to cause" the death of a person. *Id.*; § 18-3-103(1)(a); *see Moore v. People*, 925 P.2d 264, 267 n.6 (Colo. 1996) ("To sustain a conviction of second degree murder the evidence must establish that the defendant acted *knowingly* with respect to a result of his

9

conduct, *while aware that his conduct was practically certain to cause death.*").

¶ 20    On appeal, Condit asserts that he was entitled to a non-deadly physical force instruction because "[g]rabbing and tripping someone . . . is not the level of force that would normally be expected to cause death." And at trial, Condit testified that he did not try to kill the victim:

> Q    When you grabbed [the victim's] wrist, did you think that the knife would, then, go into his body?
>
> A    That thought didn't cross my mind. My focus was, like I said, on getting him to the ground so I could try to make a move for the door.
>
> . . . .
>
> Q    Did you believe, as you tripped [the victim] and struggled with him over the knife, that . . . that struggle would result in his death?
>
> A    I didn't believe that at all. That thought didn't even cross my mind.
>
> . . . .
>
> Q    Did you want [the victim] to die that day?
>
> A    No. No.

¶ 21   Condit's characterization of the force he used, along with his testimony, does not fit the definition of an affirmative defense because it does not admit to the commission of second degree murder while seeking to justify or excuse the conduct.  *See Martinez*, 2022 COA 111, ¶ 17.  Instead, it suggests that Condit did not commit second degree murder at all because he was not "aware that his conduct [was] practically certain to cause" the death of the victim.  § 18-1-501(6); *see* § 18-3-103(1)(a).

¶ 22   Still, Condit relies on *Pickering*, 276 P.3d at 555, to argue that self-defense is always considered an affirmative defense to second degree murder and cites *Vasquez*, 148 P.3d at 330, and *Opana*, ¶ 16, to contend that this extends to the use of non-deadly physical force in self-defense.  We are not persuaded.  Those cases did not analyze whether non-deadly physical force self-defense is an affirmative defense to murder, and they did not set a clear standard for when a district court is required to give an instruction on non-deadly physical force self-defense as an affirmative defense or

11

as a traverse.[1]  *See People v. Stroud*, 2014 COA 58, ¶ 33 ("[W]here an alleged error is unclear under present law, the [district] court does not commit plain error.").

¶ 23    Under the facts of this case, and without any clear case law guiding the district court, we cannot conclude that it was obvious that the court should have sua sponte given an instruction on non-deadly physical force self-defense as an affirmative defense. Accordingly, any error was not plain and does not warrant reversal. *See Hagos*, ¶ 14.

---

[1] For the first time in the reply brief, Condit argues that if the non-deadly force self-defense is not an affirmative defense, the district court plainly erred by failing to instruct on the defense as a traverse.  However, "[w]e do not consider arguments raised for the first time in a reply brief."  *In Interest of L.B.*, 2017 COA 5, ¶ 48. But even if we were to consider the argument, Colorado courts have only recognized self-defense as an element-negating traverse with respect to the crimes requiring proof of criminal negligence, extreme indifference, or recklessness.  *See People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011); § 18-1-704(4), C.R.S. 2024 ("In a case in which the defendant is not entitled to a jury instruction regarding self-defense as an affirmative defense, . . . [t]he court shall instruct the jury that it may consider the evidence of self-defense in determining whether the defendant *acted recklessly, with extreme indifference, or in a criminally negligent manner*.") (emphasis added).

### III.   Character Evidence

¶ 24    Condit next contends that the court reversibly erred by allowing the prosecution to introduce inadmissible character evidence about the victim.  Specifically, he contends that (1) some of the testimony about the victim's character went beyond evidence of a peaceful disposition; and (2) the prosecutor introduced evidence of a specific instance of conduct regarding the victim's character during direct examination, even though such evidence is only admissible during cross-examination.  We discern no reversible error.

### A.   The Challenged Testimony

¶ 25    During her opening statement, defense counsel told the jury that the victim "would do lots of drugs," including LSD.  Then, after noting that there was nothing "that suggest[ed] there was any bad blood between [the victim] and . . . Condit," defense counsel asked to the jury to consider

> how utterly terrifying it must have been to be in a situation where . . . your friend, who you were just having drugs with and having fun with, turned on you, picked up a knife, came at you, and in a moment you had to decide to defend yourself.

13

¶ 26    To rebut the contention that the victim was the initial aggressor, the prosecutor introduced evidence that the victim had a character trait of peacefulness. *See* CRE 404(a)(2). Three of the victim's good friends said the following about the victim during their testimony at trial:

- "He was very caring, responsible, organized, thoughtful, and had a small amount of very good friends."

- "He was the kindest person that you could have ever met. And all he ever wanted to do was help everyone."

- "He was loving, caring. He had the biggest heart. He was amazing."

Condit's counsel objected to each of these statements but was overruled by the district court.

¶ 27    Later, the prosecutor asked two different female witnesses about an incident that occurred at the victim's apartment three days before the victim's death where the victim, while on LSD, confronted somebody for sexually harassing the women. Condit was not involved in this incident, but he was at the apartment when it happened.

¶ 28    The first witness testified that, before the harassment occurred, the victim had taken LSD and "was very calm, happy, warm and kind."  Then, after witnessing the sexual harassment, the victim "was upset, but not in an angry way.  He was more just worried for us, because we were uncomfortable; just concerned."  The victim "spoke to [the harasser] calmly" and at no point became angry or violent.

¶ 29    The second witness testified that, after taking the LSD, the victim "seemed fine.  He just seemed like it wasn't even affecting him that much.  He just seemed a bit, like, happier than usual.  He was already a really happy guy, so he seemed more happier.  But he wasn't off in any way."  And, even after the harassment, the victim did not get angry or aggressive, and his demeanor was "the same as his typical demeanor."

¶ 30    Condit's attorney objected to much of this testimony as irrelevant, cumulative, or unrelated to character evidence of peacefulness.  But she never objected that the statements were inadmissible because they were evidence of specific instances of conduct improperly solicited during direct examination.

15

## B. Applicable Law and Standard of Review

¶ 31    In general, all relevant evidence is admissible.  CRE 402.  But, subject to certain exceptions, "[e]vidence of a person's character or a trait of that person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion."  CRE 404(a).  One such exception allows "evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor."  CRE 404(a)(2).  Even then, proof of character is restricted to "testimony as to reputation or by testimony in the form of an opinion."  CRE 405(a).  Specific instances of conduct to prove a victim's character for peacefulness are only permissible in two circumstances: on cross-examination or when the character trait is an essential element of a charge, claim, or defense.  *See* CRE 404(a)(2); CRE 405.

¶ 32    District courts are afforded considerable discretion in deciding evidentiary issues, so we will not disturb such decisions absent a showing of an abuse of that discretion.  *People v. Segovia,* 196 P.3d 1126, 1129 (Colo. 2008).  As mentioned, a court abuses its

16

discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Acosta*, 2014 COA 82, ¶ 27.

¶ 33     We review nonconstitutional trial errors that were preserved by objection for harmless error. *Hagos*, ¶ 12. Under this standard, we reverse only if the error affects the substantial rights of the parties — that is, if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 34     We review evidentiary issues that were not preserved by objection for plain error. *See Hagos*, ¶ 14. Once more, plain error is error that is obvious and substantial, and we reverse only if the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

## C.     Character Trait of Peacefulness

¶ 35     Condit contends that the district court reversibly erred by admitting testimony about the victim's character that went beyond the trait of peacefulness. We are not persuaded.

¶ 36     "[P]eaceful" is defined as "peaceable" and "untroubled by conflict, agitation, or commotion." Merriam-Webster Dictionary, https://perma.cc/A3DH-9VC4. A person who is "peaceable" is "not

17

contentious or quarrelsome," is "quietly behaved," or is "free from strife or disorder." Merriam-Webster Dictionary, https://perma.cc/Y4LQ-MZFR. The statements that the victim "was the kindest person that you could have ever met"; "was loving, caring"; and "had the biggest heart" and that "all [the victim] ever wanted to do was help everyone" all have a logical connection to the character trait of peacefulness because a person who is "kind" or "caring" is typically "not contentious or quarrelsome." *Cf. People v. Jones*, 743 P.2d 44, 46 (Colo. App. 1987) ("[T]here is little, if any, logical connection between being a good worker and having a peaceful character."). True, the witnesses did not use the term "peaceful" in their descriptions of the victim, but that is not the way people speak in everyday language. The district court did not abuse its discretion by allowing this testimony.[2]

¶ 37 We acknowledge that the statement describing the victim as "responsible, organized, thoughtful, and [having] a small amount of

---

[2] Condit also mentions that two of the witnesses said that the victim was "like a brother" to them. But these statements are not character evidence, and Condit does not explain why they should not have been admitted. *See People v. Liggett*, 2021 COA 51, ¶ 53 (appellate courts do not consider undeveloped arguments), *aff'd*, 2023 CO 22.

18

very good friends" included traits that were not related to peacefulness. But Condit himself testified that the victim "was a good person," and we cannot reasonably conclude that a single statement referencing undisputed character traits made during a two-week trial with dozens of witnesses could have "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos*, ¶ 12 (quoting *Tevlin*, 715 P.2d at 342).

### D.  The Previous LSD Incident

¶ 38    Condit also contends that the district court erred by allowing testimony about when the victim was on LSD three days before his death. Condit's counsel objected to much of the challenged testimony on the grounds that it was irrelevant, cumulative, or unrelated to the character trait of peacefulness. However, she never objected on the basis that the testimony was inadmissible under CRE 405(a) because it was evidence of specific instances of conduct presented during direct examination. "Accordingly, because [Condit] did not object on the grounds he now asserts on appeal, our review is governed by the plain error standard." *People v. Deroulet*, 22 P.3d 939, 944 (Colo. App. 2000) (citing *People v. Hampton*, 746 P.2d 947, 953 n.11 (Colo. 1987)), *rev'd on other*

19

*grounds*, 48 P.3d 520 (Colo. 2002). Assuming that it was error to admit this testimony on direct examination, we conclude that the error was not plain because it was not substantial. *See Hagos*, ¶ 14.

¶ 39   First, the testimony regarding the earlier LSD incident was not central to Condit's theory of self-defense. Condit testified that he had never seen the victim angry before and that the victim's behavior on the day of the killing was abnormal. Condit never directly tied the victim's behavior to the effects of LSD. He did not call an expert to testify that LSD could lead to sudden and drastic changes in behavior. Indeed, the People's expert witness testified that reports of people exhibiting violent behavior after taking LSD are "pretty rare," and, with those reports, it "is often difficult to know if it was the drug or a predisposition because of a psychiatric disorder or something else." Under these circumstances, the testimony about the LSD incident was unlikely to have meaningfully affected the jury's consideration of Condit's self-defense claim.

¶ 40   Second, the testimony was not a central part of the prosecution's case against Condit. During the two-week jury trial,

20

the prosecution called thirty-four witnesses to testify. The testimony of the two witnesses who spoke about the LSD incident was brief and constituted only a minute portion of the prosecution's case-in-chief. And any prejudice from this testimony was substantially mitigated because the prosecution had already properly elicited opinion testimony demonstrating that the victim had a generally peaceful character and expert testimony establishing that LSD typically does not make users aggressive or violent. *Cf. People v. Ayala*, 919 P.2d 830, 833 (Colo. App. 1995) ("The impact of the reputation testimony was minimized because . . . the trial court did not err in permitting the police officer to testify regarding his opinion of the informant's general character for truthfulness.").

¶ 41 Thus, we conclude that this assumed error did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Hagos*, ¶ 14.

## IV. Cumulative Error

¶ 42 Finally, Condit contends that the cumulative effect of the alleged errors in his trial mandates reversal. We disagree.

¶ 43  "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Conyac*, 2014 COA 8M, ¶ 152.  Under the doctrine, although an individual error, when viewed in isolation, may be harmless, reversal is required when the cumulative effect of multiple errors and defects substantially affected the fairness of the trial or the integrity of the factfinding process.  *Howard-Walker v. People*, 2019 CO 69, ¶ 24.

¶ 44  We have assumed that the district court erred by failing to sua sponte instruct the jury on non-deadly physical force self-defense as an affirmative defense and by allowing testimony about the previous LSD incident, and we concluded that the errors were not plain.  Additionally, we concluded that it was harmless error for the court to admit the statement that referenced character traits other than peacefulness.

¶ 45  Condit's claim of self-defense hinged almost entirely on the credibility of his testimony, and Condit's credibility was severely diminished because he

- admitted to attempting to cover up the killing by cleaning up the evidence in the apartment, dumping the victim's body in the mountains, and lying to the police;

- told his uncle that he killed the victim during a dispute but did not mention that he did so in self-defense; and

- did not explain the additional knife wounds to the victim's hand and foot in his testimony about self-defense.

For these reasons, as well as the reasons that none of the errors individually mandated reversal, we conclude that the cumulative effect of the two assumed errors and the single improper statement did not substantially impact the fairness of the trial or the integrity of the factfinding process. *See id.*

## V. Disposition

¶ 46   The judgment is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.