23CA1569 Peo v Ahmed 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1569
City and County of Denver District Court No. 22CR603
Honorable Eric M. Johnson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Abdishakur M. Ahmed,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Harvey A. Steinberg, Taylor Ivy, Denver,
Colorado, for Defendant-Appellant

¶ 1    Defendant, Abdishakur M. Ahmed, appeals the judgment of conviction entered after a jury found him guilty of second degree assault and second degree murder.  We affirm.

## I.    Background

¶ 2    The trial produced the following evidence.

¶ 3    In January 2022, Ahmed worked at a restaurant next to a food mart where the victim, Maurice Burgess, worked.  The two businesses had separate entrances and exits but shared infrastructure, including a water heater located inside the food mart.  One evening, the water heater was not working so Ahmed went to the food mart to ask Burgess to check it.  The two men had a history, and there had been a simmering conflict between them for some time.

¶ 4    As Ahmed described it, his request to check the water heater led to a verbal altercation during which Burgess threatened and pushed him.  At one point, Burgess asked Ahmed to leave the food mart, and Ahmed refused.  Burgess came around the counter toward Ahmed and, because he felt threatened, Ahmed took out a knife.  As Burgess approached Ahmed, Ahmed pushed him, striking him in the face with the knife.  Ahmed then chased Burgess as a

"little kind of bluff." Burgess fell to the ground and pulled shelves off the walls to use as weapons and to create a barrier. At this point, Ahmed testified he left, saying, "Leave me alone," "I'm leaving you alone," and "I'm out of here."

¶ 5 Ahmed left the food mart but stopped just outside, where he either pulled the door toward himself to prevent Burgess from getting out or pushed against the door to prevent Burgess from locking him out. After a short time, Burgess grabbed a shelf and went outside after Ahmed.

¶ 6 Once outside, Ahmed and Burgess physically fought each other for almost five minutes. Burgess hit Ahmed with the shelf, knocking out one of his teeth. Ahmed testified that when he was hit, he had the knife in his hand and stabbed Burgess but thought that the knife "deflected." Shortly thereafter, Burgess stopped defending himself. When Ahmed realized Burgess had stopped moving, he called 911.

¶ 7 Burgess died from a stab through his back into his chest that was at least five inches deep, cut his rib, and went into his heart. He also suffered dozens of other nonfatal wounds to his head, face, neck, and hands.

¶ 8     The People charged Ahmed with second degree assault and first degree murder.  At trial, Ahmed raised the affirmative defense of self-defense.  The trial court instructed the jury on ordinary force self-defense for the second degree assault charge and deadly force self-defense for the first degree murder charge.  The court also instructed the jury on the provocation and initial aggressor exceptions to self-defense for both charges.  The jury found Ahmed guilty of second degree assault and the lesser included offense of second degree murder.

¶ 9     Ahmed now appeals, arguing the trial court erroneously (1) refused to instruct the jury on ordinary force self-defense with respect to the first degree murder charge and (2) provided instructions on the provocation and initial aggressor exceptions to self-defense on both charges.

## II.     Self-Defense

¶ 10    Ahmed contends the trial court erred by restricting the jury's consideration of self-defense for the first degree murder charge to the use of deadly physical force.  We disagree.

### A. Standard of Review and Applicable Law

¶ 11 We review de novo whether sufficient evidence supports a self-defense jury instruction. *People v. Coahran*, 2019 COA 6, ¶ 15. If we find a preserved error of constitutional dimension, we must reverse if there is a reasonable possibility that the error contributed to the conviction. *Hagos v. People*, 2012 CO 63, ¶ 11; *Coahran*, ¶ 16 ("If a trial court refuses to give an affirmative defense self-defense instruction in circumstances where one was appropriate, . . . [t]his error implicates a defendant's constitutional rights and is reviewed for constitutional harmless error.").

¶ 12 A trial court should instruct the jury on an affirmative defense if "some credible evidence" supports the defense. § 18-1-407(1), C.R.S. 2025; *Pearson v. People*, 2022 CO 4, ¶ 16. We consider the evidence in the light most favorable to the defendant. *People v. Newell*, 2017 COA 27, ¶ 19. Additionally, we can affirm on any grounds supported by the record, and we are not bound to the trial court's reasoning. *People v. Glover*, 2015 COA 16, ¶ 22.

¶ 13 Self-defense may be raised as an affirmative defense to first and second degree murder. *See* § 18-1-704(1)-(2)(a), C.R.S. 2025. When properly raised, the prosecution must disprove the affirmative

4

defense of self-defense beyond a reasonable doubt. *People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011). Thus, the affirmative defense of self-defense effectively becomes an additional element of the charged crime. *Id.* at 555.

¶ 14 Self-defense may justify the use of ordinary force or deadly force. A person is justified in using *ordinary* force "to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by . . . [an]other person." § 18-1-704(1). A person may use *deadly* force only if he "reasonably believes a lesser degree of force is inadequate and . . . has reasonable ground to believe, and does believe, that he . . . is in imminent danger of being killed or of receiving great bodily injury." § 18-1-704(2)(a).

¶ 15 Deadly physical force is "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." § 18-1-901(3)(d), C.R.S. 2025. A defendant intends to produce death when he uses force that would normally be expected to, and does, produce death. *People v. Opana*, 2017 CO 56, ¶ 16. This is an objective inquiry into the degree and

nature of the force actually used, not an inquiry into the defendant's subjective intent.  *Id.* at ¶¶ 9, 14, 16.

### B.    Analysis

¶ 16    Like the trial court, we conclude that there was insufficient evidence to warrant an ordinary physical force instruction on the first degree murder charge.[1]  Even considering the evidence in the light most favorable to Ahmed, *Opana* compels the conclusion that Ahmed's actions were the kind for which the intended, natural, and probable consequence was to produce death.

¶ 17    In *Opana*, a jury convicted the defendant of second degree murder after he shot his housemate in the chest with a handgun at close range.  *Id.* at ¶¶ 3-4.  At trial, the defendant testified to the circumstances surrounding the murder, claimed that he only drew his gun to dissuade the victim from attacking him, and denied that he intended to pull the trigger.  *Id.* at ¶ 4.  In rejecting the defendant's contention that he was entitled to an ordinary force

---

[1] The People invite us to decide whether ordinary physical force is available as an affirmative defense to second degree murder as a matter of law.  We need not reach this argument because we conclude that there was insufficient evidence to warrant an ordinary physical force instruction.

self-defense instruction, the supreme court did not consider the broader context of the shooting or the defendant's expressed intent; rather, the court focused solely on the physical force the defendant actually inflicted. *Id.* at ¶ 17. Because the defendant shot the victim at close range in the chest, "the credible evidence permit[ted] no other finding than that the physical force used by the defendant would normally be expected to, and in fact did, produce death." *Id.* at ¶ 16.

¶ 18    As in *Opana*, ¶ 17, the circumstances surrounding the homicide and Ahmed's subjective intent have no bearing on the question whether the force he used could amount to anything less than deadly force. Thus, to determine whether the trial court should have given the jury an ordinary force instruction for the murder charge, we consider the physical force Ahmed actually used and Burgess's resulting injuries.

¶ 19    The parties disagree about the scope of Burgess's injuries. The People maintain that Ahmed stabbed Burgess twenty-four times in the chest, back, face, and head, citing testimony from Detective Sisneros, the primary investigator on the case. Ahmed disagrees, pointing out Detective Sisneros's subsequent admission

7

that she did not know the extent to which some of Burgess's wounds could have been caused by something other than the knife. At the same time though, Ahmed also asserts that "the physical force he used [was] stabbing blindly during the fight." Regardless, Ahmed maintains that Burgess sustained only three knife wounds: one fatal "stab" wound and two nonfatal "incised" wounds.

¶ 20 Even when we view this evidence in the light most favorable to Ahmed, however, it still establishes that Ahmed struck Burgess with the knife at least three times in areas near vital organs — his chest, head, and back. The strike to the back punctured Burgess's heart, a type of wound logically understood as one naturally and likely to cause death. Indeed, the medical examiner testified that Burgess could only have been expected to live for "seconds to a few minutes" after suffering the fatal wound.

¶ 21 As there is no evidence supporting the conclusion that Ahmed's use of force was anything other than deadly, the trial court did not err by refusing to instruct the jury on ordinary self-defense.

### III. Self-Defense Exceptions

¶ 22 Ahmed contends that there was insufficient evidence to instruct the jury on the provocation and initial aggressor exceptions

to self-defense, in part, because the second degree assault charge and the first degree murder charge arose from two separate incidents. We disagree with Ahmed because the evidence supports a conclusion that the charges arose from a single incident, and we conclude some evidence supported instructing the jury on both exceptions.

## A. Standard of Review

¶ 23 Again, we review whether sufficient evidence supports jury instructions de novo. *Coahran*, ¶ 15. If a trial court errs by instructing the jury about an exception to self-defense, we reverse if the error substantially influenced the verdict or affected the fairness of the trial. *Hagos*, ¶ 12; *see also Castillo v. People*, 2018 CO 62, ¶¶ 55-56 (reviewing an initial aggressor jury instruction for nonconstitutional harmless error).

¶ 24 When instructing the jury on the affirmative defense of self-defense, a trial court should also provide instructions on the exceptions to self-defense if some evidence supports them. *Galvan v. People*, 2020 CO 82, ¶ 25. We consider the evidence in the light most favorable to giving the instruction, *id.* ¶ 33, and we can affirm on any grounds supported by the record, *Glover*, ¶ 22.

9

## B.   Same Incident Underlying Both Charges

¶ 25   Central to Ahmed's argument is his assertion that the events underlying the second degree assault charge and the first degree murder charge were separate incidents.  Specifically, Ahmed claims that his interaction with Burgess inside the food mart, including his act of stabbing Burgess in the face, could not be the "provoking act" or the "initial aggressor act" to the first degree murder charge because, immediately afterwards, he left the food mart — thereby ending the encounter — and Burgess chose to follow him outside.

¶ 26   For crimes of violence, the "same incident" is "an occurrence considered to be a single, rather than more than one, happening or unit of experience." *Marquez v. People*, 2013 CO 58, ¶¶ 7, 9; *see also Castillo*, ¶ 48 (finding the *Marquez* definition of "same incident" instructive when deciding whether the events underlying a charge constituted "one happening or one unit of experience" for purposes of evaluating the propriety of initial aggressor exception to a self-defense instruction).  To determine whether events underlying multiple charges are the same incident, a court considers such factors as time, place, circumstance, and schematic wholeness. *People v. Knapp*, 2020 COA 107, ¶ 27.

¶ 27    The events inside the food mart underlying the second degree assault charge and the events outside underlying the first degree murder charge were not separate incidents. From start to finish, the entire episode lasted less than fifteen minutes and took place in a single location — inside and out front of the food mart. There was no clear break in the action when Ahmed left the food mart and Burgess followed him outside. To the contrary, when Ahmed went outside, he was either pulling on or pushing against the door, and, very soon after, Burgess went outside after him. As the events underlying both charges were part of a single, ongoing incident, we look at the entire episode to determine whether there was some evidence supporting the provocation and initial aggressor exceptions. *See Castillo*, ¶¶ 47-49 (assessing whether the defendant was the initial aggressor to the "entire episode" because the events underlying the charges could not be broken into separate incidents).

## C.    Provocation Exception

¶ 28    A defendant forfeits self-defense as an affirmative defense if he provokes the victim into attacking him with the intent to injure or kill the victim. *See* § 18-1-704(3)(a). The trial court should instruct

11

the jury on the provocation exception if (1) the victim used unlawful physical force against the defendant; (2) the defendant provoked the victim's use of force; and (3) the defendant intended to goad the victim into attacking him as a pretext to injure or kill the victim. *Galvan,* ¶ 19. Considering these three requirements, we conclude that some evidence supports the provocation instruction here.

¶ 29 First, Ahmed testified that Burgess pushed him.

¶ 30 Second, Ahmed went to the food mart uninvited, armed with a knife, and argued with Burgess. Burgess then asked Ahmed to leave, and Ahmed refused, leading Burgess to come around the counter. Some evidence supports the conclusion that Ahmed's refusal to leave provoked Burgess into this physical escalation of the confrontation.

¶ 31 Third, the simmering argument between Burgess and Ahmed is some evidence Ahmed intended to provoke Burgess into assaulting him by persisting in his demand that Burgess check the water heater. Further, the fact that Ahmed went to the food mart armed with a knife, produced the knife during a verbal altercation, and chased Burgess with the knife as a "little kind of bluff" provided additional evidence of Ahmed's intent to provoke Burgess as a

pretext to injuring or killing him.  *See id.* ¶ 33 (evidence of threateningly approaching the victim permitted the jury to infer the defendant intended "to egg on" the victim, so he would have justification to injure her).

¶ 32    Therefore, regardless of the trial court's reasoning, some evidence supported giving the provocation instruction, and the court did not err by giving the instruction on both charges.

### D.    Initial Aggressor Exception

¶ 33    Ahmed also contends there was insufficient evidence to support an initial aggressor instruction.  Again, we disagree.

¶ 34    A defendant forfeits self-defense as an affirmative defense if he is the initial aggressor.  *See* § 18-1-704(3)(b).  An initial aggressor may justifiably use force in self-defense only "if he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force."[2]  *Id.*  A

---

[2] Ahmed also asserts that he withdrew from the encounter and communicated his withdrawal.  As a result, he argues, he was entitled to act in self-defense if Burgess retaliated.  Whether Ahmed withdrew and communicated his withdrawal was a factual question for the jury.

trial court should provide instructions on the initial aggressor exception if there is any evidence that the defendant initiated the conflict by using or threatening imminent use of unlawful physical force. *Castillo*, ¶¶ 41, 43.

¶ 35    In *People v. Roberts-Bicking*, 2021 COA 12, ¶ 34, the defendant pointed his pistol at the victims and threatened them. The division concluded that "merely *producing* the pistol during an argument was sufficient to warrant instructing the jury on initial aggressor principles." *Id.* at ¶ 36. Here, similar to *Roberts-Bicking*, Ahmed produced his knife during the argument with Burgess. That act was sufficient to support the trial court's decision to provide an initial aggressor instruction.

## E.    Mutual Exclusivity

¶ 36    Ahmed contends that even if some evidence supported giving instructions on the provocation and initial aggressor exceptions, the instructions should have informed the jury that the exceptions are

14

mutually exclusive.[3] He argues that the provocation exception only applies where the *victim* initiated the attack on the defendant and the initial aggressor exception only applies where the *defendant* initiated the attack on the victim. However, in *Galvan,* the supreme court held that provocation is not limited to situations where the victim initiates the attack. *Galvan,* ¶ 19 n.4 ("[S]ection 18-1-704(3)(a) does not limit the exception to a situation in which the victim attacks first. Nor have we ever engrafted such a restriction onto the exception."). Therefore, the provocation and initial aggressor exceptions are not inherently mutually exclusive. *See Roberts-Bicking,* ¶¶ 41, 45-46 (rejecting the defendant's assertion that the trial court must instruct the jury that the provocation and initial aggressor exceptions are mutually exclusive and concluding that an act of aggression, if taken with the intent to provoke the

---

[3] Ahmed also asserts, without development or legal support, that the instructions should have "contained guidance for the jury in determining who acted as an aggressor and who was a victim under the circumstances." We decline to address this argument because it is not sufficiently developed for appellate review. *See People v. Hicks,* 262 P.3d 916, 920 (Colo. App. 2011) (declining to review a contention because the defendant "neither articulated a cogent argument for review nor provided supporting legal authority").

victim to attack, can establish both that the defendant is the initial aggressor and that the defendant provoked the victim).

¶ 37     Further, the provocation and initial aggressor exceptions are not mutually exclusive in this case.  By finding Ahmed guilty of second degree assault and second degree murder, the jury necessarily found that the prosecution disproved self-defense beyond a reasonable doubt.  As the jury unanimously agreed that Ahmed did not act in self-defense, the jury did not need to agree on the specific theory for why self-defense was unjustified — whether Ahmed provoked Burgess, whether Ahmed was the initial aggressor, or whether Ahmed was not acting in self-defense at all.  *See People v. Mosely*, 2021 CO 41, ¶ 21.

¶ 38     Ultimately, because the provocation and initial aggressor exceptions are not inherently mutually exclusive, and because the exceptions are not mutually exclusive in this case, the trial court did not err.

## IV.   Disposition

¶ 39     The judgment is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.